

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00149-CR

_____

CURLEY HAWTHORNE JEFFERSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Marion County, Texas
Trial Court No. F13,905

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Curley Hawthorne Jefferson pled guilty to evading arrest with a vehicle, a charge of which he had also been previously convicted. He was found guilty by the trial court and was sentenced to four years' confinement in the penitentiary. Jefferson's sentence was suspended, and he was placed on community supervision for a period of four years.

Alleging Jefferson intentionally and knowingly possessed cocaine and was in unlawful possession of a firearm, the State moved to revoke his community supervision for violation of the terms to commit no offense, perform 160 hours of community service at not less than twelve hours per month, pay court assessed fees at the rate of twenty dollars per month, and attend and complete a life skills class. The trial court revoked Jefferson's community supervision and imposed the suspended sentence.

Jefferson appeals on the grounds that the trial court erroneously denied his motion to suppress evidence of the cocaine and firearm and that the evidence was insufficient to revoke his community supervision. We overrule both points of error.

I.      Probable Cause Existed to Issue a Warrant for Jefferson's Arrest

Jefferson complains that the description contained within the affidavit for search and arrest warrant was insufficient for the magistrate to "conclude that there was a fair probability that contraband would be found at that location." The "issuing magistrate's decision to grant the search warrant" should be reviewed with a deferential standard of review. *Davis v. State*, 202 S.W.3d 149

(Tex. Crim. App. 2006); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Warrants should not be invalidated through "'hypertechnical' interpretation of their supporting affidavits." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). With the deferential standard in mind, we will sustain the issuance of the warrant if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* (citing *Gates*, 462 U.S. 236).

To justify the issuance of a search warrant, the supporting affidavit must set forth facts sufficient to establish probable cause:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp. 2009). The magistrate is authorized to draw reasonable inferences from the affidavit. *Wilson v. State*, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Examining only the four corners of the affidavit, we look to the totality of the circumstances to determine whether the facts set forth are adequate to establish probable cause. *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex. Crim. App. 1996); *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); *Elardo v. State*, 163 S.W.3d 760, 763 (Tex. App.—Texarkana 2005, pet. ref'd).

The affidavit attached to the search warrant specifically named Jefferson and his son and described the residence to be searched as a

yellow frame wooden single family dwelling with composite shingle roof, front door facing west. West of US highway 59, cross the railroad tracks turn left on C. Box rd, also known as CR 3243, travel .6/10th of a mile. Residence will be located on the left side of the roadway approximately 100 yards up a driveway behind a one rail gate.[1]

The affidavit stated that illegal substances were at the residence of Jefferson based on information from a confidential informant who had provided reliable information on several occasions. The informant advised the officer that he observed controlled substances (cocaine, crack cocaine, marihuana and Xanax pills) at the residence controlled by Jefferson and his son on March 25, 2009 (the day before the affidavit was signed). The informant further stated that Jefferson made a weekly run to Dallas to purchase narcotics, that he had observed Jefferson with a pistol stuck in his belt at the residence, and that he was present at a residence where controlled substances were observed on numerous occasions within the month. The affidavit also informed the magistrate that the residence was under surveillance.

Jefferson does not attack the veracity of the informant or the basis of the informant's knowledge; instead, he argues that the information provided does not provide the magistrate with sufficient information to conclude there was a fair probability that contraband would be found at that location because the affidavit does not state:

> 1) that the informant was ever in the residence as opposed to "at" the residence; 2) where the controlled substances were seen or kept on the premises on any occasion; 3) any reason for the magistrate to conclude that the substances were

---

[1]Although Jefferson challenged the description of the residence at trial, his briefing to this Court does not.

in the residence when he issued the search warrant, i.e. the substances were kept in a cabinet or somewhere else; 4) the results of the surveillance set up by the officers and referred to in the affidavit; 5) any factual basis for the conclusion that Appellant went to Dallas weekly to purchase controlled substance for sale at the residence; 6) and when the informant saw Appellant in possession of the pistol.

We reject Jefferson's contentions. The key fact is the observation of the substances, not the wording of whether the informant was "in" or "at" the residence. Recent personal observation of illegal substances at a residence occupied by the defendant is sufficient information to allow the magistrate to conclude that the substances could be found at the described residence. The facts set forth in the affidavit provided a substantial basis for the magistrate to conclude that a search of the residence would uncover evidence of wrongdoing.

A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd). Because we have determined the affidavit was sufficient and the warrant was properly issued, we overrule Jefferson's point of error.

## II.    The Evidence Was Sufficient to Revoke Jefferson's Community Supervision

While the decision to revoke community supervision rests within the discretion of the trial court, it is not absolute. *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). To revoke community supervision, the State must prove every element of at least one ground for revocation by a preponderance of the evidence. *T.R.S.*, 115 S.W.3d at 320; *Johnson v. State*, 943

5

S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.). "'Preponderance of the evidence' has been defined as the greater weight and degree of credible testimony." *T.R.S.*, 115 S.W.3d at 320. In other words, if the greater weight of credible evidence in this case created a reasonable belief that Jefferson violated any condition of community supervision, the standard was met. *Id.* at 321 (citing *Martin v. State*, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)).

Considering the unique nature of a revocation hearing and the trial court's broad discretion in the proceedings, the general standards for reviewing factual sufficiency do not apply. *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd). Instead, we review the trial court's decision regarding revocation for an abuse of discretion, and examine the evidence in a light most favorable to the trial court's order. *T.R.S.*, 115 S.W.3d at 321; *Pierce*, 113 S.W.3d at 436 (citing *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)). Thus, if the greater weight of credible evidence creates a reasonable belief a defendant has violated a condition of his or her community supervision, the trial court's order of revocation did not abuse discretion and must be upheld. *Pierce*, 113 S.W.3d at 436 (citing *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). If the State's proof is sufficient to prove any one of the alleged community supervision violations, the revocation should be affirmed. *T.R.S.*, 115 S.W.3d at 321 (citing *Stevens v. State*, 900 S.W.2d 348, 351 (Tex. App.—Texarkana 1995, pet. ref'd)).

When the warrant was executed, 22.4 grams of powder cocaine, a magazine for a gun, and digital scales with cocaine residue were located in Jefferson's room where he was sleeping. Five

6

bags of powder cocaine weighing 1.52 grams, marihuana, hydrocodone, and a pistol with bullets were recovered in or under the couch in the living room where another man was sleeping. The magazine in Jefferson's room fit the gun found in the living room. Jefferson's community supervision officer testified he was "48 hours in arrear[s] [on community service hours] as of the time of the filing of the motion" to revoke. Additionally, Jefferson failed to attend life skills class and, despite numerous warnings, had failed to pay costs for four months, amounting to a total arrearage of $80.00.

Testifying in his defense at the hearing, Jefferson denied that the home searched was his or that the pistol and drugs belonged to him. He also denied having funds to make the payments required under the terms of his community supervision or attend the life skills course. Finally, Jefferson claimed he was unable to perform the community service hours for four months because he had to spend time with his children on weekends. However, the record demonstrates Jefferson worked for himself in the car stereo business, and there is nothing establishing his community service hours for Meals on Wheels could only be performed on weekends.

Further, the evidence revealed that Jefferson had filed a motion in the trial court claiming that the thirty-six items of personal property taken during the search and listed on the inventory were his property, which he requested the court to order delivered back to him.

In a revocation hearing, the trial judge is the sole trier of the facts and determines the credibility of the witnesses and the weight to be given to the testimony. *T.R.S.*, 115 S.W.3d at 321;

7

*Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.); *Johnson*, 943 S.W.2d at 85. The judge may accept or reject any or all of a witness' testimony. *T.R.S.*, 115 S.W.3d at 321 (citing *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987)). In this case, since the trial judge was the sole trier of the facts and credibility, he was free to reject all of Jefferson's testimony as incredible excuses. *T.R.S.*, 115 S.W.3d at 321; *Johnson*, 943 S.W.2d at 85.

Reviewing the evidence in a light most favorable to the verdict, we conclude the record is sufficient to support the trial judge's reasonable belief by a preponderance of the evidence that Jefferson committed the offense of possession of a controlled substance as alleged in the motion to revoke. Drugs, a gun magazine, and digital scales were all located in close proximity to Jefferson in the room in which he was sleeping. Jefferson acknowledged ownership of many items of personal property seized in the home. This evidence is sufficient to establish the requisite linkage of Jefferson with the illegal substance. The evidence, coupled with reasonable inferences, is sufficient to establish that Jefferson exercised actual care, custody, control, or management of the cocaine under the bed in which he was sleeping. *See Evans v. State*, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006).

Additionally, the evidence was sufficient for the court to determine Jefferson violated the community supervision terms requiring him to complete community service at a rate of twelve hours per month. Thus, we cannot say the trial court abused its discretion or acted without reference to guiding rules and principles in revoking Jefferson's community supervision. The order of revocation is upheld.

### III.    Conclusion

We affirm the judgment of the trial court revoking Jefferson's community supervision.


Jack Carter
Justice

Date Submitted:     November 18, 2009
Date Decided:       December 11, 2009

Do Not Publish